David Moule  OSB 762620
Of attorneys for Plaintiff
259 E. Fifth Avenue
Eugene,  OR  97401
moulefrank@aol.com
(541) 687-1812

David G. Terry  OSB 791149
Of attorneys for Plaintiff
1228 SE Douglas Avenue
Roseburg, OR 97470
davidterrylaw@gmail.com
(541) 672-4893

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| LACY GIRARD, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| | ) | |
| v. | ) | 42 U.S.C. §§ 1983, 1985; Violation of |
| | ) | Civil Rights, 8th and 14th Amendments |
| JASON BATTIN, COLETTE, | ) | |
| PETERS, BRIAN BELLEQUE, | ) | |
| HEIDI STEWARD, PAULA | ) | |
| MYERS, MICHAEL GOWER, | ) | |
| ROBB PERSSON, ERIKA SAGE, | ) | |
| DAWNELL MEYER, RICHARD | ) | |
| STEPHEN ALBERTS JR., ALANA | ) | |
| BRUNS, ROMERO YANEZ, | ) | |
| ANTHONY ROSS, JENNIFER | ) | |
| ELGIN, KARL MOODY, | ) | |
| JOHN DOE, JANE DOE, and the | ) | |
| STATE OF OREGON, | ) | |
| | | |
| Defendants | | |

COMPLAINT AND DEMAND FOR JURY TRIAL

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Plaintiff by and through her attorneys, brings her complaint herein and states and alleges as follows:

## INTRODUCTORY STATEMENT

1.

This suit is filed by Plaintiff Lacy Girard under 42 U.S.C. § 1983 for actions by the named defendants for violations of her rights secured by the United States Constitution, including the First, Eight and Fourteenth Amendments, by the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985.

Plaintiff, a vulnerable person, was an inmate in Coffee Creek Correctional Facility (CCCF), an Oregon Department of Corrections (ODOC) in 2016, 2017, 2018, 2019, 2020  and 2021.  Plaintiff was sexually abused while an inmate by Defendant Jason Battin, a correctional officer. The other defendants failed to provide adequate supervision and training of staff and safeguards to prevent plaintiff and other inmates from being sexually abused by Defendant Battin Defendants failed to recognize and respond to obvious signs Defendant Battin was grooming female prisoners, had a sexual predator pattern which was known to many staff members and management at CCCF. Defendants failed to provide legally mandated counseling as required by the provisions of the Prison Rape Elimination Act (PREA) for the benefit and protection of the Plaintiff and subjected Plaintiff to recurring psychological damage by failing to treat her ongoing psychological injuries arising from the sexual abuse. A conspiracy of silence existed among the defendants to protect one another and themselves.   Plaintiff seeks compensatory and punitive damages, including reasonable costs, disbursements and attorney fees pursuant to 42 U.S.C.§ 1988.

## JURISDICTION AND VENUE

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

2.

Jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the laws of the United States. This Court has jurisdiction over plaintiff's claims under 28 U.S.C. § 1343 because plaintiff has brought this action to seek redress for the deprivation of rights secured by the United States Constitution.

3.

Venue is proper under 28 U.S.C. § 1391(b)(2), because the acts and omissions alleged herein occurred in Washington County, Oregon.  Further, one or more of the defendants reside in the District of Oregon and Plaintiff's claims for relief arose in this district.

4.

PARTIES

Plaintiff is a resident of Oregon and was incarcerated at the Coffee Creek Correctional Facility at most times herein.  She presently resides in Oregon.

5.

Defendant Colette Peters was at all relevant times the Director for ODOC. Defendant Peters has oversight of ODOC employees and AICs and is responsible for the enforcement and compliance with federal law, including the United States Constitution and the mandates of the Prison Litigation Reform Act (PLRA), the Prison Rape Elimination Act of 2003 (PREA), and the laws of the State of Oregon. Defendant Peters approves and signs PREA audits for every ODOC institution in Oregon. She has implemented a zero-tolerance policy for sexually assaulting AICs within ODOC by employees of ODOC. Defendant Peters has led Governor Kate Brown certify to

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

the United States government that Oregon is in compliance in all regards and meeting all of the requirements of PREA for compliance in order to continue to secure federal funding to the State of Oregon.

6.

Defendant Brian Belleque, until approximately May 1, 2019, was the Deputy Director for ODOC and responsible for carrying out and implementing all policies of the Director and the Policy Group. He was responsible for the overall safe and secure operation of all ODOC correctional institutions.

7.

Defendant Heidi Steward is the current Deputy Director of ODOC. She has held this position since approximately April 1, 2019. Heidi Steward is responsible for carrying out and implementing all policies of the Director and the Policy Group. She is responsible for the overall safe and secure operations of all ODOC correctional institutions. Defendant Heidi Steward was also the Assistant Director of Correctional Services.

8.

Defendant Michael Gower is the Assistant Director of Operations. He is the direct supervisor of every ODOC Superintendent within ODOC. Defendant Gower has the authority to direct and implement changes within ODOC prisons. He oversees the budgeting for each institution and approves budget requests for security improvements within ODOC. Defendant Gower is responsible for ensuring that Oregon prisons are safe, civil and productive and is responsible for institutional management.  Michael Gower, as Assistant Director of Operations, is responsible for PREA compliance and the safe and secure operation of ODOC Institutions.

9.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Defendant Rob Perrson is ODOC's Assistant Director of Operations supervises ODOC superintendents. He is and has been responsible for ensuring the Oregon prisons are safely managed and for PREA compliance and safe operation of ODOC institutions.

10.

Defendant Ericka Sage is the ODOC PREA Coordinator. As the PREA Coordinator she passes along PREA audit recommendations to defendants Peters, Belleque, Steward, Gower and the CCCF Superintendent and Assistant Superintendent of Security for CCCF for implementation.

11.

Defendant Paula Myers was Superintendent at CCCF during all relevant times through 2020. At all times relevant, Paula Myers was acting under the color of law and is sued in her official capacity.

12.

Defendant Jason Battin was a correctional officer at CCCF at all relevant times who sexually abused plaintiff on several occasions.

13.

Defendants Richard Stephen Alberts, Jr., Romero Yanez, Alana Bruns Karl Moody, Jennifer Elgin, John Doe, Jane Doe, Anthony Ross were correctional officers, security staff or counselors at CCCF at all times who knew or should have known about Battin's behavior and unauthorized conduct.

14.

The State of Oregon employed the individual defendants and is liable for their conduct under the doctrine of respondeat superior.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Exhaustion of Administrative Remedies**

15.

Plaintiff has exhausted all available administrative remedies with respect to all claims and all Defendants involved in the events alleged in this complaint

**FACTUAL ALLEGATIONS**

(Coffee Creek Correctional Facility)

16.

Coffee Creek Correctional Facility (CCCF), located in Wilsonville, Oregon and is Oregon's only prison housing female AICs. It also serves as the intake center for all prisoners entering ODOC. The facility opened in 2001 and contains 1,684 beds.

17.

Since opening, CCCF has been the location of numerous sexual assaults, rapes and misconduct by staff against female AICs.

• 2004 – Lt. Jeffrey Allen Barcenas pled guilty to four counts of official misconduct for engaging in sex with a female AIC.

• 2008 – CO Richard Mitchell had female AICs to expose themselves to and engage in sexual favors with Mr. Mitchell.

• 2008 – CO Robert Dunlap was accused of abuse against a female AIC.

• 2009 – Mr. Paul Golden, CCCF employee was convicted of 15 counts of custodial sexual misconduct and the State was sued by the female AICs.

• 2009 – Mr. Richard Kaleo Rick, a civilian plumber working at CCCF, convicted and the state, prosecuted for sexually abusing AICs.

Page 6 of 33 – **Complaint**

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

• 2009 – Mr. Troy Bryant Austin, a civilian maintenance worker at CCCF, was convicted and the state was sued for sexually abusing AICs.

• 2009 – CO Darcy Aaron MacKnight was convicted of custodial sexual misconduct for having sex with a female AIC.

• 2010 – Christopher Don Randall, Food Services Coordinator, pled guilty to two counts of official misconduct for engaging in sexual intercourse with a female AIC.

• 2012 – Jeremy Joseph Veelle, Physical Plant employee, was charged with official misconduct for sexually abusing a female AIC.

• 2012 – Shawn Jacob Riley, a civilian employee at CCCF, arrested and charged with official misconduct and custodial sexual misconduct for sexual acts against a female AIC.

• 2016 – CO Edgar Mickels was arrested and charged with first degree sexual misconduct and three counts of custodial sexual misconduct for engaging in sexual contact with at least one female AIC.

• 2017 – CO Brian Joseph Balzer was convicted of first degree custodial sexual misconduct for his conduct with a female AIC at CCCF. Mr. Balzer's victim alleges there were other victims.

• 2017 – Dr. Robert W. Snider was sued by three female AICs alleging they were sexually abused by Dr. Snider during unsupervised examinations while incarcerated at CCCF.  The case was dismissed on summary judgment based on a statute of limitations defense.z

• 2019 – Tony Klein, ODOC nurse, was accused by at least 12 female AICs

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

who filed federal lawsuits against ODOC and several medical staff members of a long pattern of sexual grooming, assault, battery and retaliation for abuses committed by a male nurse.

• 2019 – Douglas Cloutier, ODOC kitchen employee, at least four female AICs filed complaints for sexual assault and battery against Mr. Cloutier.

•2021 – Richard Stephen Alberts, Jr., a former  CO at CCCF and a defendant in this complaint, was convicted on federal charges of smuggling drugs and contraband into CCCF.  Alberts also pleaded guilty and was convicted in Washington County Circuit Court of first degree custodial misconduct for raping a female AIC in CCCF.

18.

Oregon Revised Statutes 423.075(5)(d) states the Director of the Oregon Department of Corrections shall provide for the safety of all prisoners in the custody of the department.

19.

On August 20, 2012, the Department of Justice issued the final rule adopting national standards to prevent, detect, and respond to prison rape, as required by the Prison Rape Elimination Act of 2003 (PREA).

20.

ODOC has a zero-tolerance policy for sexual abuse. The Prison Rape Elimination Act of 2003 is a federal law that seeks to eliminate sexual assaults and sexual misconduct. This law applies to all federal and state prisons. The Bureau of Justice Statistics carries out, annually, a comprehensive statistical review and analysis of the incidence and effects of prison rape. The major provisions of the standards are: general prevention planning, supervision and monitoring, cross-gender searches and viewing, training and education, screening, reporting, responsiveness planning, investigations, discipline, medical and mental health, grievances, and audits. DOC

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

continues its efforts to maintain safety for all AICs and others inside the facilities keeping PREA as a top priority. ODOC, in AIC publications, handbooks, posters, fliers, and other types of communications with AICs, has created an expectation that ODOC will do everything within its powers to protect AICs from staff assault and that ODOC expects AICs to be respected by staff at all times.

21.

The Prison Rape Elimination Act (PREA) became federal law in 2003. The Oregon Department of Corrections adopted the mandates of PREA in Rule 40.1.13 and was modified in September 2018.

22.

PREA's purpose is to provide for the analysis of the incidence and effects of prison rape in federal, state and local institutions, and to provide information, resources, recommendations and funding to protect individuals from prison rape. PREA seeks to establish a zero-tolerance policy regarding rape and sexual abuse inside correctional facilities. PREA also mandated the publication of standards to ensure compliance and to improve prevention, detection and response strategies in addressing sexual abuse and assault.

23.

The requirements of ODOC Policy 40.1.13 and PREA include prevention, planning, investigation, prosecution, and provide counseling and treatment to victims. Oregon identifies itself as being committed to a zero-tolerance standard for sex abuse and sex harassment.

24.

The Agency PREA Coordinator is responsible for the development, implementation and oversight of the department's compliance with the PREA standards in all department facilities.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Policy 40.1.13 II.A. In order for this coordination to occur the Operations Division, which Defendant Gower is in charge of, has to authorize the recommended implementation recommendations. Without the adoption, cooperation on approval of the Operations Division, the Agency PREA Coordinator lacks authority to enact change.

25.

The PREA compliance manager is a management staff person designated by the institution functional unit manager, with sufficient time and authority to coordinate the facilities' efforts to comply with the federal PREA standards. (Policy 40.1.13 II.F.) However, absent the approval and direction of the Superintendent and Assistant Superintendent of Security, the PREA Compliance Manager lacks operational authority to make any changes or order anything to occur differently at an institution.

26.

Sexual abuse of an AIC by a staff member includes any of the following acts, with or without consent of the inmate:

1) Contact between the mouth and any body part where the staff member has the intent to abuse, arouse or gratify sexual desire;

2) Penetration of the genital opening by hand, finger, object or other instrument, that is unrelated to official duties or where the staff member has the intent to abuse, arouse or gratify sexual desire;

3) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh or the buttocks that is unrelated to the official duties or where the staff member has the intent to abuse, arouse or gratify sexual desire;

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

4) Any attempt, threat, or request by a staff member to engage in such activities.

5) Voyeurism by a staff member, contractor or volunteer. (Policy 40.1.13.II.G)

27.

The sexual abuse liaison is a management staff person designated by the institution functional unit manager to coordinate response reporting and monitoring of AIC abuse within the institution. The sexual abuse liaison shall be assigned as the Sexual Abuse Response Team (SART) leader.

28.

The SART is a team of institution staff consisting of a Behavioral Health Services (BHS) staff member, a Medical Services staff member and the sexual abuse liaison who are designated by the functional unit manager to respond to all allegations of AIC sexual abuse or sexual coercion.

29.

All staff are covered by the mandates of PREA and Policy 40 including all ODOC employees, OCE employees, contract service providers and volunteers.

30.

ODOC Policy 40 mandates that all staff "must be able to recognize the signs of sexual abuse and sexual harassment and understand their responsibility in the detection, prevention, response and reporting of an alleged sexual abuse or sexual harassment."

31.

Each facility is required to conduct and document unannounced rounds on all shifts to deter staff sexual abuse and sexual harassment. Staff is prohibited from alerting other staff members that the supervisory rounds are occurring.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

32.

ODOC shall ensure that each facility it operates develops and documents a staffing plan that provides for adequate levels of staffing to protect AICs against sexual abuse.

33.

It is the AIC's right is to be free from sexual abuse and retaliation. AIC's can exercise this right by reporting sexual abuse and obtaining mental health services if victimized.

34.

Policy 40 mandates access to services, including reporting, for AIC victims of any and all sexual abuse or sexual harassment.

35.

Policy 40 mandates all staff to report "immediately any knowledge, suspicion or information regarding sexual abuse, sexual harassment, retaliation by AIC or staff for reporting or staff neglect or violation of responsibility that may have contributed to such incidents.

36.

Policy 40 sets forth the procedures to be followed when a complaint of sexual abuse or harassment is received. The PREA Compliance Manager shall be responsible for monitoring all AICs and staff to protect from retaliation or harassment by other staff or AICs. Typically, CCCF requests the Oregon State Police to conduct criminal investigations into allegations of sexual abuse inside the prison.

37.

ODOC states there is to be no long-term forfeiture of services and programs for victims of sexual abuse and that the safety of the victim is paramount. AICs will be housed in the least

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

restrictive housing, will have timely unimpeded access to emergency medical treatment, necessary post event treatment including coordination with community hospitals, medical services, and referral to Behavior Health Services and communication with a designated sexual abuse liaison regarding further information required.

38.

Mental health services are required to be provided for victims of sexual abuse including timely, unimpeded access to appropriate mental health evaluation services without financial cost, comprehensive information on the limits of confidentiality and duty to report, completion of a mental health evaluation to include suicide risk screening, notification of the Officer in Charge and Medical Services regarding recommended actions, and follow up mental health services.

RESPONSE TO PRIOR PREA INVESTIGATIONS

39.

Following the sexual abuse investigations many of the women victims, including plaintiff, were placed in solitary confinement, and were limited in visits with children and family. The superintendent for CCCF initiated an internal review which found that the facility had inadequate security patrols, rooms without windows or adequate surveillance, an overall shortage of surveillance cameras, and too many employees with access to limited private areas. The superintendent adopted a "Rule of Three" which prohibits entry into some parts of the prison unless three people—a mix of staff and AICs—are present.

40.

While neither PREA nor Policy 40 create a private right of action, national standards as implemented by the rule create duties of staff.  Rights held by inmates are another protected "condition of confinement" protected under the Eighth Amendment to the United States

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Constitution.  PREA and the state policy creates notice to employees of expected performance and parameters of behavior which have the impact of law.

41.

Lacy Girard

Plaintiff was born in 1990.  She got pregnant at 16.  Her daughter is with paternal grandparents until she is released. When she was 18 years old, she had surgery and was treated for cancer.  She lost the bone marrow in her femur, which was replaced with a rod.  She became addicted to pain pills, and when her prescriptions expired, turned to heroin.  She was convicted for identity theft for checks she wrote in her mother's husband's name and was sent to prison in 2012 for 26 months at Coffee Creek.  She got out in 2013.  Prior to her release, she was sexually assaulted by Caesar Leone, a kitchen coordinator for the prison.  She reported the assault, saw an attorney, but did not follow through because she violated the terms of her release by altering her prescription, knew she would be going back to prison, and was scared for people to know that she had turned someone in at Coffee Creek and she feared retaliation.  This was in 2014.  She got pregnant again and had a baby December 8, 2015.  Then she relapsed and went back to prison at the end of December.

42.

Plaintiff was on a downward departure.  She ran from the courtroom, jumped off the roof, and was charged with escape II.  She was sentenced on the downwards departure and the escape getting a total of 52 months.  She relapsed and was returned to  ODOC custody at Coffee Creek with PTSD and addiction issues in 2015.

43.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Plaintiff was a physical plant painter at the prison, allowed to roam premises without staff. In October of 2016, Plaintiff's painting partner and best friend, Bonnie Doan, told Plaintiff the corrections officer Jason Battin inquired about Plaintiff, saying she was still hot. He was working on D unit and was training somebody. Plaintiff was painting in the classroom at the time. They wanted a doorstop to keep classroom door open to ventilate fumes. Plaintiff asked Battin if he had the doorstop. He said it's back here. He asked the guy he was training to stay at the podium. He entered the janitor's closet and went all the way back in the closet and called her to come back there. He pointed to a moisture mark on the ceiling. Painters weren't allowed to go in janitor closets. Battin asked, do you think if I put in a work order you could do this closet. She said you know we aren't supposed to be back here, so I don't think that is why your want me back here, so can I get that doorstop? He pushed her against a wall and began kissing her neck. She put her hands up and felt shaky. He unbuttoned her pants, put his hands down her pants, and put his fingers in her vagina.

Plaintiff told him to stop, you'll get us in trouble, and pushed him away. He was kissing her on the mouth and biting her neck. He said OK, but you'll come back. She never came back. She ran out of the closet and saw Bonnie, Bonnie looked at her and asked what was wrong, that Plaintiff looked white as a ghost. Bonnie's wife, Linda Adams, saw something. Linda was threatened by Battin that he would put her in the hole if she said anything. Linda Adams, now Doan, said nothing.

44.

Thereafter, Battin got possessive, as if they were in a relationship. Plaintiff found a way out of it when Bonnie told her that Battin was having sex with another inmate: Plaintiff yelled at Battin and told him to leave her alone. He left her alone for a period of time.

Page 15 of 33 – **Complaint**

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

45.

Plaintiff went to segregation in September of 2017.  She had a cellmate named Jasmine Barnett, who reported it.  Battin came by and didn't even care that Jasmine was present and told Plaintiff, Let me see your tits.  Plaintiff said, No.  He came back again and said, Show me your fucking tits.  Plaintiff said No, I'm not going to do that. He left and then came back. Usually, officers would shift areas, but Battin wouldn't let the other officer patrol Plaintiff's side. Defendant Battin came back, stood at the door, and said, Let me see your fucking tits.  Plaintiff felt she  had to do it or he wouldn't leave her alone.  So she did it, and felt degraded.  He left.

46.

Jasmine was removed from segregation, and Battin came back that night. He said, Let me see your pussy.  Plaintiff said No, I'm bleeding and hairy.  He insisted, and stood there and she showed him and he made her put her fingers in her vagina.  Then he walked away. Plaintiff cried herself to sleep that night.

47.

Plaintiff was paroling in 20 days because she won her appeal of the escape conviction and got 16 months off her sentence.  Two days later, September 14, 2017, she was informed that Billy Davis, her boyfriend at the time, died in a motorcycle in an accident on his way to be with Plaintiff upon her release.  Plaintiff was emotionally distraught.

48.

With Leone, it was as if they were friends, and Plaintiff  thought she may have led him on by being friendly.  With Battin, he was preying upon her.  She was messed up and started doing heroin more than she had before, and was thankful when she was caught and sent back to prison.

49.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Plaintiff was back at Coffee Creek in March of 2019. She was there about 30 days and she was sent back in segregation when she was caught up in a huge investigation of correction officers providing contraband to inmates. Two girls were getting drugs from an officer, and Plaintiff got some of it from the girls, and her name came up. Plaintiff got six months in segregation for getting high. The girls got a lot longer because they got the drugs from an officer.

50.

Before being sent to segregation Plaintiff was an orderly. Battin was working J unit and instantly Plaintiff's heart dropped. He requested for her to go to J unit. He called Plaintiff to the podium and said, God, you're still so fucking hot. He pointed out newly installed cameras and said, Its hard to do anything now. He said he was working C-D patrol now and that she should probably move to C unit. She was hoping to go to G unit but said OK.

51.

Plaintiff was put in G unit. Then one day she was told she was being moved to C unit. She didn't want to go and told the captain, she would rather be sent to the hole than be forced to go to C unit. The captain said it was a direct order. Plaintiff knew she was supposed to follow orders, but refused. They handcuffed her and put her in the hole. One of the old captains with whom she has a good rapport, Yanez, asked what happened. Plaintiff was crying and said she couldn't go to C unit. Yanez said, Why not? Plaintiff was fearful of retribution if she informed on a correctional officer and felt she had to make up a lie and said she had a conflict with somebody her brother told on and that she afraid. Yanez said OK, but that doesn't mean you can be disrespectful. But they let her out of segregation and put her back in G unit.

She was in segregation for about six months for the drug activity from June to December and Battin came back there in August 2019 and did the same thing. He walked by, this time in

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

the morning, exposed his circumcised penis, and asked her to show him her boobs.  She said no, people are going to hear you.  He said I don't care.  He made her show her boobs and her vagina. He didn't make her put her fingers in this time.  He was obvious about it.  Others know.

52.

Plaintiff was questioned about it by Captain Wilson, probably in March of 2020.  Her friend Kameron Baszler  was her cellmate and similar abuse happened to her with a nurse named Tony Klein.  Plaintiff told Kameron about what happened.  Kameron said you need to say something.  Plaintiff said she couldn't.  Plaintiff said because Battin and his wife are well liked. Half of Plaintiff's friends have Battin's wife as a counselor and they all love her.

53.

Kameron got retaliated against and complained to Captain Wilson and told him what happened to Plaintiff.

54.

Battin and other correctional officers are being federally investigated for being involved in providing drugs to other inmates.

55.

Plaintiff saw Battin escorted off the premises.  Wilson called Kameron back in and said its your cellie, isn't it.  Wilson called Plaintiff down.  She asked him how he knew it was her that he needed to talk to.  Wilson said he did some digging and that Plaintiff had made a statement in 2017, and didn't she remember?  She didn't remember, as that was also the time when her boyfriend died.  He said she wouldn't talk then.  She told him that she feared retaliation.  Wilson told her he would protect her.  Then he moved Battin's wife to the other side of the institution.  He moved Plaintiff to a cellmate she felt comfortable with.  He allowed Bonnie to be present when

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

1  she talked to the Oregon State Police in July or August.  There was a four month delay because of

2  the corona virus.

3  56.

4  Plaintiff filed a grievance to give notice.  They accepted the grievance in August.

6  CLAIMS FOR RELIEF

7  FIRST CLAIM FOR RELIEF

8  Cruel and Unusual Punishment – Sexual Abuse

9  42 U.S.C § 1983 – Violation of Eighth Amendment

10  57.

11  Sexual abuse of an AIC is deeply offensive to human dignity and is cruel and unusual

12  punishment under the Eighth Amendment. AICs have an Eighth Amendment right to be free from

13  sexual abuse.  Sexual abuse of an AIC also constitutes excessive force and violates the Due

14  Process Clause of the Fourteenth Amendment.

15  58.

16  Plaintiff is entitled to be held in safe and humane conditions of confinement throughout

17  her incarceration. Plaintiff is entitled to be free from unwanted and unwarranted sexual touching

18  and abuse. She is entitled to her own personal bodily integrity pursuant to the parameters of the

19  Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff is also entitled to

20  to be safe and secure from undue and excessive force while in custody.

21  59.

22  The acts and omissions of defendant Battin violated plaintiff's protected rights and were

23  an excessive intrusion onto her person without just cause and amounted to deliberate indifference

24  to plaintiff's protected rights and her own personal safety. Defendants violated the requirements

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

of the Eighth and Fourteenth Amendment rights held by plaintiff through the use of intentional and abusive sexual assault and subjecting her to unsafe and inhumane conditions of confinement. The specific acts of defendant Battin individually and alleged are more particularly set forth below:

1) Defendant Battin attempted to physically restrain, sexually touch or cause serious bodily harm and significant mental distress to plaintiff. The actions of defendant Battin against plaintiff occurred in 2017, 2018 and 2019.

2) The actions of defendant Battin violated at least one of the enumerated definitions of sexual abuse of an AIC by a staff member as set forth in ODOC Policy 40.1.13.II.G.

3) The actions of defendant Battin were in violation of existing correctional standards, the United States Constitution, and state and federal laws and rules.

4) Defendant Battin's actions were not only criminal but also placed plaintiff, as well as other AICs and correctional staff, in harm's way. Defendant Battin sexually abused plaintiff in his attempt to engage in numerous prohibited sexual contacts.

60.

Defendants Peters, Belleque, Gower, and Perrson knew of various technology security solutions that would aid in the prevention and deterrence of sexual assault in prisons. Technology exists to allow correctional facilities to track AIC and staff movement around the clock. The system alerts the institution if a staff member were alone with an AIC within a particular area of the institution. This system would have easily monitored defendant Battin's movements within CCCF.

61.

As a result of the violations of the Constitutional standards set forth herein, plaintiff

Page 20 of 33 – **Complaint**

suffered physical assaults to her person, severe emotional trauma from the ongoing assaults and threats, and a significant deterioration in her mental state causing her to become severely depressed. She was isolated, helpless and disregarded. As a result of the violations of the Constitutional standards set forth herein, plaintiff has suffered from forms of stress, depression, anxiety and an exacerbation of her underlying problems. The acts and omission of defendants, taken under color of law, constituted deliberate indifference and violated plaintiff's right under the Eighth Amendment to the United States Constitution.

632.

As a result of the violations of the constitutional standards set forth herein, plaintiff continues to suffer from anxiety, stress, anger, hopelessness, depression and ongoing battles with stress.

63.

As a result of the violations of the United States Constitution, plaintiff seeks economic and noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000. Plaintiff seeks punitive damages against defendants.

64.

All defendants' conduct was well defined by law and each defendant knew or reasonably should have known that their conduct both below the standard prescribed by law herein but also was illegal.

65.

As a result of the violations of the United States Constitution, plaintiff seeks economic and noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000. Plaintiff seeks punitive damages against defendants.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

66.

The acts and omission of defendants, taken under color of law, constituted deliberate indifference and violated plaintiff's right under the Eighth Amendment to the United States Constitution.                                             67.

Plaintiff is entitled to an award of attorney fees, expert fees and costs pursuant to 42 U.S.C. 1988.

SECOND CLAIM FOR RELIEF

Deprivation of Federal Civil Right

Failure to Protect

(42 U.S.C §§ 1983, 1985)

Plaintiff further alleges:

68.

Plaintiff, as a prisoner confined to a correctional facility, is entitled to be provided the essential aspects of a safe, sanitary and humane confinement including protection from harms and threats to her safety and security under the laws of the State of Oregon and the Eighth Amendment to the United States Constitution.

69.

Plaintiff is entitled to the full protection of the laws including the Prison Litigation Reform Act and the Prison Rape Elimination Act which requires ODOC and defendants to comply with the laws in providing protection from assault including rape, providing protection to vulnerable AICs, and to comply with all aspects of intervening and providing a safe environment to plaintiff.

70.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Defendants violated the constitutional and statutory rights held by plaintiff in the following ways:

1) Failure to timely investigate defendant Battin's actions;

2) Failure to timely investigate defendant the actions of defendant Alberts and numerous other lawbreaking correctional officers.

3) Failure to provide adequate supervision and training for staff;

4) Failure to provide adequate safeguards and protections for AICs from Battin and other lawbreaking correctional officers.

5) Failure to respond to obvious signs that defendant Battin was grooming plaintiff, and displayed sexual predator patterns which were known to many staff members including security staff and management at CCCF;

6) Failure to respond to obvious signs that defendant Battin was attempting to sexually abuse plaintiff, and displayed sexual predator patterns which were known to many staff members including security staff and management at CCCF;

7) Failure to provide legally mandated counseling as required by provisions of the PREA for the benefit and protection of plaintiff;

8) Lack of concern for security and premises defects at CCCF. Defendant Battin had access to various secluded areas of CCCF that were known as areas of illegal activity and were not equipped with adequate and properly placed monitoring systems;

9) Knowledge of defendant Battin's actions and their failure to take immediate action to stop defendant Battin's actions;

10) Failure to protect plaintiff from sexual harassment and intimidation from correctional officers;

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

11) Failure to preserve evidence of defendant Battin's actions, by failing to preserve video surveillance of hallways, closets and areas of segregated confinement.

12) Punishment of plaintiff for actions of corrupt correctional officers;

13) Failure to ensure that plaintiff's conditions of confinement complied with constitutional standards.

71.

As a result of the behaviors of the defendants herein plaintiff suffered repeated sexual assault, was placed in constant fear for her safety, could not meet with advocates, was denied abuse counseling, could not safely access medical care, could not safely access legal counsel, was housed in inhumane conditions, suffered repeated verbal abuse and her underlying anxiety and medical and psychological conditions were exacerbated.

72.

As a result of the violations of the United States Constitution, plaintiff seeks economic and noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000. Plaintiff seeks punitive damages against defendants.

73.

The acts and omission of defendants, taken under color of law, constituted deliberate indifference and violated plaintiff's rights under the Eighth Amendment to the United States Constitution.

THIRD CLAIM FOR RELIEF

Deprivation of Federal Civil Rights

Failure to Supervise

(42 U.S.C §§ 1983, 1985)

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Plaintiff further alleges:

74.

The constitutional deprivations suffered by plaintiff are the proximate and direct cause of an indifferent, and willfully ignorant supervisory practice by the named defendants. The supervisors have a constitutional duty to protect prisoners and to provide them with safe and humane conditions of confinement including the right to be free from sexual abuse and assault by staff. This duty imposed on supervisory staff includes the obligation under the law to fully investigate claims of sexual misconduct by staff against prisoners, the mandatory duty to report and address claims of sexual assault on prisoners, the duty to maintain a good and constant supervision of male staff supervising female prisoners, and the duty to ensure that AICs are held in constitutionally adequate conditions. The duty is enhanced when the prisoner population is especially vulnerable particularly if they are smaller, physically weaker, more vulnerable because of past abuse and their susceptibility to be easily abused.

75.

The constitutional deprivations committed by the supervisory staff were long-standing and in the face of several years of obvious and notable signs about the predatory habits of defendant Battin and other correctional officers such as their ability to set their own schedules, roam the facility at will, pull AICs from their housing units during off hours, have unchaperoned access to women, exhibiting sexualized behaviors, their failure to follow recommended guidelines for interactions with AICs, their lack of accountability, numerous rumors and innuendo, and a complete lack of investigation and follow up.

76.

The supervisory staff failed in the following particulars:

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

1) Failed to implement adequate AIC monitoring and managing process after the repeated sexual violations at CCCF noted above;

2) Failed to provide adequate safeguards to keep AICs from meeting alone with staff;

3) Failed to note and respond to evidence of abuse, and the obvious and clear record of serial predatory sex offenders;

4) Refused to take action because they purposefully disregarded the complaints of AICs, did not believe anyone would care about the wellbeing of the AICs, did not believe anyone would believe AICs, and generally allowed defendant Battin to thrive in plain sight;

5) Treated the AICs as if they deserved the abuse they received. If any one of the supervisory staff had followed through on the complaints and obvious signs of abuse, the plaintiff in this action would not have been sexually assaulted or abused;

6) Tolerated and encouraged staff to take proactive measures to discourage complaints about sexual behaviors;

7) Refused to allow plaintiff access to legal mail and legal counselors, searched legal mail, instructed grievances to be denied and delayed for arbitrary reasons; Supervisors have taken an informal policy approach that the staff members are more important than AICs and must be protected from complaints by prisoners; and

8) Issued orders that the victim of defendant Battin would not receive the guarantees of federal and state law including mental health counseling, access to their chosen PREA advocate or adequate conditions of confinement.

9) Conspired by silence to protect other defendants.

77.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Furthermore, the supervisory staff failed plaintiff by failing to institute national standards for prison security by failing to inspect staff members coming and going from prison, failing to stop the introduction of contraband into the prison by staff, failing to follow up on location and work production by subordinate staff, failing to demand accountability by subordinate staff, and failing to have safe and adequate investigative procedures for complaints made by prisoners toward staff, and conspiring by silence to protect other defendants.

78.

As a result of the unconstitutional practice by supervisors which was promoted, allowed or facilitated within CCCF, female informants, witnesses or victims of sexual abuse were ignored, or retaliated against for filing complaints of sexual abuse.

FOURTH CLAIM FOR RELIEF

Deprivation of Federal Civil Right

Failure to Protect, Cruel and Unusual Punishment,

CCCF's liability for the actions of its employees

(42 U.S.C § 1983 – Violation of Eighth Amendment)

Plaintiff further alleges:

79.

Defendants had knowledge of, ignored, acquiesced and facilitated the unconstitutional action of subordinate officials and correctional officers. The specific liabilities are as follows:

1) Failure to timely investigate defendant Battin's actions;

2) Failure to timely investigate the actions of other lawbreaking correctional officers.

3) Failure to provide adequate supervision and training for staff;

4) Failure to provide adequate safeguards and protections for AICs from defendant Battin;

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

5) Failure to respond to obvious signs that defendant Battin was attempting to sexually abuse plaintiff, and displayed sexual predator patterns which were known to many staff members including security staff and management at CCCF;

6) Failure to provide legally mandated counseling as required by the provisions of the PREA for the benefit and protection of plaintiff;

7) Lack of concern for security and premises defects at CCCF. Defendant Battin had access to various secluded areas of CCCF that were known as areas of illegal activity and were not equipped with adequate and properly placed monitoring systems;

8) Knowledge of defendant Battin's actions and their failure to take immediate action to stop defendant Battin's actions;

9) Failure to protect plaintiff from sexual harassment and intimidation from correctional officers;

10) Failure to preserve evidence of defendant Battin's actions, by failing to preserve video surveillance of C-Unit, D-Unit and the staff bathroom;

11) Failure to comply with the mandates set forth in PREA, including but not limited to meeting with plaintiff 30, 60, and 90 days after the incident.

12) Failure to comply with the mandates set forth in PREA

13) Conspiracy of silence to protect other defendants

80.

The deprivations committed by the supervisory staff was longstanding and in the face of several years of obvious and notable signs about the predatory habits of defendant Battin and other lawbreaking correctional officers , to set their own schedule, roam the facility at will, pull AICs from their housing units during off hours, have access to women without chaperones,

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

exhibition of sexualized behaviors, failure to follow recommended guidelines for interactions with prisoners, lack of accountability, numerous rumors and innuendos, and a lack of investigation and followup.

81.

Furthermore, the supervisory staff failed plaintiff by failing to institute national standards for prison security by failing to inspect staff members coming and going from prison, failing to stop the introduction of contraband into the prison by staff, failing to follow up on location and work production by subordinate staff, failing to demand accountability by subordinate staff, and failing to have safe and adequate investigative procedures for complaints made by prisoners

82.

As a result of the practices by defendant supervisors—which were promoted, allowed, or facilitated within CCCF—female informants, witnesses or victims of sexual abuse were ignored, punished or retaliated against for filing complaints of sexual abuse. As a result of the behaviors of the defendants herein, plaintiff suffered repeated sexual assault, was placed in constant fear for her safety, feared meeting with advocates, was denied abuse counseling, could not safely access medical care, was held in unlawful conditions, and her underlying anxiety and PTSD were severely exacerbated.

83.

Plaintiff, as a prisoner confined to a correctional facility, is entitled to be provided the essential aspects of a safe, sanitary and humane confinement including protection from harms and threats to her safety and security under the laws of the State of Oregon and the Eighth Amendment to the United States Constitution.

84.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

Plaintiff is entitled to the full protection of the laws including the Prison Litigation ReformAct and the Prison Rape Elimination Act which requires ODOC and defendants to comply with the laws in providing protection from assault including rape, providing protection to vulnerable inmates, and to comply with all aspects of intervening and providing a safe environment to plaintiff.

85.

Defendants violated the constitutional and statutory rights held by plaintiff in failing to timely investigate defendant Battin's actions and in failing to guarantee that all inmates were in a safe and secure environment when they worked and where they were housed and not face sexual victimization.

86.

As a result of the behaviors of the defendants herein, plaintiff suffered repeated sexual assault, was placed in constant fear for her safety, and her underlying anxiety and PTSD were severely exacerbated.

87.

As a result of the violations of the United States Constitution, plaintiff seeks economic and noneconomic damages in a sum to be more fully determined at trial but no less than $1,000,000.  Plaintiff seeks punitive damages against defendants.

88.

The acts and omission of defendants, taken under color of law, constituted deliberate indifference and violated plaintiff's right under the Eighth Amendment to the United States Constitution.

89.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

As a result of the negligence and violations of the standard of care by the defendants and the State of Oregon, plaintiff was sexually battered, verbally abused, harassed and suffered significant emotional damages to her non-economic loss of no less than $1,000,000.

FIFTH CLAIM FOR RELIEF – NEGLIGENCE

Plaintiff further alleges:

90.

The deprivations suffered by plaintiff are the proximate and direct cause of her physical and psychological harm  because of indifferent and willfully ignorant supervisory practice by defendants.

91.

Defendnts have a constitutional and statutory duty to protect prisoners and to provide them with safe and humane conditions of confinement including the right to be free from sexual harassment, abuse and assault by staff.

92.

Defendants were negligent in the following particulars:

1. Failure to implement adequate inmate and staff monitoring after repeated sexual violations at CCCF.

2. Failure to provide adequate safeguards to keep inmates from being alone with staff.

3. Failure to note and respond to evidence of abuse.

4. Failure to investigate and purposeful disregard of complaints

5. Toleration and encouragement of retaliation against inmates who voiced concerns about sexual behavior of staff.

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

6. Failure to stop or discipline defendant Battin for his obvious and continual grooming behaviors, inappropriate and flirtatious comments and sexual conduct towards and contact with numerous female inmates on a daily basis.

7. Willfully ignoring violations of restrictions on contact and behavior between staff and inmates.

93.

The failure of the individual defendants and the State of Oregon to comply with existing standards of behavior and conduct were the direct cause of the sexual battery suffered by Plaintiff.  The failure to adhere to known expected standards was a deviation from thee existing standard of care and it was foreseeable that Battin would perpetrate sexual assault and harassment of female inmates including Plaintiff.

94.

As a result of the negligence and violations of the standard of care by the defendants and the State of Oregon, plaintiff was sexually battered, sexually harassed and suffered significant emotional damages to her loss of $1,000,000.  She should have long term counseling because she was damaged by defendants' actions and omissions to her economic damage of $150,000.

PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this Court will enter a judgment in her favor, and against defendants, as follows:

A. Finding that defendants violated her protected constitutional rights and statutory;

B. Finding that as a result of the constitutional and statutory violations alleged herein plaintiff has sustained harm and damages in the amount of $1,000,000;

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131

C. Finding that the cause of the constitutional violations is intentional or so grossly and deliberately indifferent to justify the award of punitive damages against each named defendant in a sum no less than $100,000.00 each;

D. Finding that Plaintiff will require further medical treatment and counseling in the amount no less than $150,000.00;

E. Findings that plaintiff was subject to sexual assault as a result of the actions of individuals in the employment of the State of Oregon;

F. For an award of economic and noneconomic damages in an amount to be proven at trial, but not less than $1,000,000;

G. For an award of punitive damages in an amount to be proven at trial

H. For plaintiff's reasonable attorney fees, costs, and disbursements; and

I. For such other relief as the law permits and justice requires.

DATED this 30th day of July, 2021.

Respectfully submitted,

MOULE & FRANK

/s/*David Moule*  OSB 762620
Of attorneys for Plaintiff
259 E. Fifth Avenue
Eugene,  OR  97401
moulefrank@aol.com
(541) 687-1812

/s/*David G. Terry*  OSB 791149
Of attorneys for Plaintiff
1228 SE Douglas Avenue
Roseburg, OR 97470
davidterrylaw@gmail.com
(541) 672-4893

**MOULE & FRANK, LAWYERS**
259 EAST FIFTH AVENUE
Eugene, Oregon 97401
Telephone: 541.485.131